**Violet NAEGLE and Milton Jensen, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**The DEPARTMENT OF SOCIAL SERVICES OF the STATE OF SOUTH DAKOTA; James Ellenbecker, Secretary of the South Dakota Department of Social Services; Richard S. Schweiker, Secretary of the United States Department of Health and Human Services and the Agents, Employees, and Successors of the above, Defendants.**

Civ. No. 81–3042.

United States District Court, D. South Dakota, C. D.

Oct. 16, 1981.

William D. Froke, East River Legal Services, Brookings, S.D., for plaintiffs.

Janice C. Godtland, Asst. Atty. Gen., Dept. of Social Services, Pierre, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Plaintiffs challenged the validity of the method used to determine income eligibility under the 1981 South Dakota Energy Assistance Program. Having determined that the state plan does, in this respect, violate federal regulations and the requirements of due process and that plaintiffs' suit should be certified as a class action, the relief sought by plaintiffs will be granted.

### FACTUAL BACKGROUND

This action was brought challenging certain aspects of the State of South Dakota's Low Income Energy Assistance Program (EAP), for fiscal year 1981. This program, which is similar to the 1980 program that was before this Court in *Grueschow v. Harris*, 492 F.Supp. 419 (D.S.D.1980), *aff'd.* 633 F.2d 1264 (8th Cir. 1980), was created by Congress to be administered by the states for the purpose of granting financial assistance to eligible households to offset rising heating costs. The State of South Dakota elected to participate in the program, and prepared a Plan under which the program would be operated.

On page 18 of the State Plan, under Section M.5.(d)(11)(d), it was stated that

Household income will be computed using the previous 90 days income and annualizing [multiplying by four] this amount. The previous year's 1040 form will be used if the household income is derived from farming or self-employment.

Both named plaintiffs, who purport to bring this suit as a class action, were applicants under the EAP who received fixed monthly incomes from sources such as the Veteran's Administration (VA), and Social Security and Supplemental Security Income (SSI). For both named plaintiffs, the relevant maximum income for eligibility in

EAP was $4738. Plaintiff Jensen's actual total income for the twelve months prior to his EAP application was $4683, while plaintiff Naegle's actual income was $4446. Because neither was a farmer or self-employed, however, their annual incomes were required to be determined by multiplying their income from the preceding 90 days by four.

In plaintiff Naegle's case, she was receiving $390.10 in SSI benefits per month and $5.00 VA widow's pension per month. Using the state method of computation, this amounted to an annualized income of $4741, or three dollars above the maximum. In plaintiff Jensen's case, he was receiving $206.40 per month from Social Security and $197 in VA benefits per month. Under the state method, this becomes an annualized income of $4841, or $103 above the maximum. Plaintiffs' EAP applications were denied by defendant.

In answer to a discovery order by this Court, the state has indicated that the number of applicants who may have been denied benefits solely because their "annualized" income [the income from the last 90 days multiplied by four] exceeded the maximum is 201.

### DISCUSSION

#### I.

Plaintiffs have alleged that the state method of calculating income was irrational and that it operated to violate their due process rights in EAP benefits to which they would have otherwise been entitled. While this position does have merit, the Court examines first the validity of the state plan under governing federal regulations, in particular the following:

Households eligible under the State's plan and that are similarly situated with respect to energy costs, income, and other considerations relevant to assistance under the Act, must receive similar amounts of assistance.

45 F.R. 66695, § 260.154(g) (October 7, 1980), (revising part 260 of Title 45 of the

Code of Federal Regulations).[1] While the state was given no particular standard for determining income limits, 45 F.R. 66695, § 260.160 (October 7, 1980), it is clear that its discretion in defining income was necessarily subject to the general regulation cited above, § 260.154(g). It is also clear that the state's method of determining income cannot stand under § 260.154(g).

Applicants such as plaintiffs would have been eligible had it not been for the peculiar method of income calculation to which they were subject. Had they been farmers or self-employed, they could have used their actual income from the preceding year, and there is no dispute that their income would have then fallen below the relevant limit. They would have then, presumably, received the same amount of EAP assistance as any other eligible applicant who lived in the same region of the state, used the same heating source, and had the same heating costs. Yet simply because these plaintiffs were not farmers or self-employed, but were retired, and living on fixed incomes, these benefits were denied entirely.

This constitutes a manifest violation of the language of § 160.154(g): households "that are similarly situated with respect to energy costs, income, *and other considerations relevant to assistance under the Act,* must receive similar amounts of assistance." (emphasis supplied). It can hardly be contended that the fact one applicant's income is derived from government retirement benefits rather than from door-to-door sales is a consideration relevant to whether that applicant should receive energy assistance. This is, however, precisely what the state method does: the income of a retired applicant and a door-to-door salesman might have been identical in the preceding year, yet because the latter is "self-employed", he is free to disregard increased income lately received, and may utilize his last year's income tax return in his EAP application, and, presuming that the income stated there fell below the maximum, will become eligible for benefits. On the other hand, if the last three months income of an appli-

cant situated as is a plaintiff here is sufficient to exceed the eligibility maximum *when "annualized"*, the applicant is disqualified, however low or non-existent his income the first nine months of the year.

■ Clearly, the state had considerable discretion to define income, and had it either used last year's income tax forms for *all* applicants, or used the prior 90 days income multiplied by four for *all* applicants, there would have been little to challenge in the plan. Instead, the state arbitrarily created several different classes of applicants, farmers, self-employed, and all these who were not farmers or self-employed, and in effect distributed benefits differently depending on the class to which an applicant happened to belong. The state argues that it used the 90 day method for most applicants on the ground that it believed most applicants would find it too difficult to provide proof of their actual income in the preceding year. But this contention is unsound. The state offers no indication, and the Court perceives none, why the self-employed are more likely to possess the records of their actual income than those who are other than self-employed. Further, it is clear that the program was intended to give "priority . . . to eligible households with elderly or handicapped persons." 45 F.R. 66695, § 260.155(a) (Oct. 7, 1980). As in plaintiffs' case, these elderly or handicapped persons are frequently living on "fixed" incomes or government assistance. It is not difficult for one whose income varies but little from month to month to show his or her actual income from the preceding year. To be in compliance with the federal regulation § 160.154(g), the state must treat all applicants equally, regardless of their source of income. The Court is not urged, nor would it be equitable, to order all farmers or self-employed EAP recipients to reapply using the 90 day method, and perhaps then have to refund their benefits. Therefore, the only means available now to bring the state into compliance with § 260.154(g) is to allow the other applicants to reapply using the meth-

---

**1.** The state's plan explicitly recognizes this requirement at page 17, Section M.5.(d)(7).

od available to farmers and the self-employed.

## II.

Turning next to plaintiffs' contentions that the state method of income calculation was irrational and violative of due process, the Court must also agree with plaintiffs' position. It is true, as the state argues, that it "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). As the prior portions of this opinion have sought to make clear, however, the use of different methods of income calculation for different classes of applicants simply because those applicants have different sources of income lacks any "reasonable basis". This Court can find no sufficient rational basis, and has been furnished none by the state, to justify a plan that offers a particular group one income computation method which tends to have the effect of making it easier for that group to obtain benefits, while offering another group a different method that tends to make it more difficult for that group to obtain benefits when both groups may be receiving precisely the same amount of income. *See United States Department of Agriculture v. Murray*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). The Court finds, therefore, that plaintiffs' due process rights were violated by the state EAP plan.

For the reasons above, this action is certified as a class action, the class consisting of all applicants for energy assistance under the South Dakota Low Income Energy Assistance Program FY 81 Plan whose income was not derived from farming or self-employment and who were denied energy assistance benefits under the State Plan solely because their Annualized Household Income exceeded the relevant income eligibility standard set forth in the State Plan. Defendants shall forthwith provide full and complete notice to plaintiffs' class of their right to reapply within thirty days of the date of the notice for benefits under the 1981 EAP program, at which time the members of plaintiffs' class may show whether they would have been eligible at the time of the original application under the method that was used to determine eligibility for farmers and the self-employed. A permanent injunction shall issue restraining defendants from taking any action which would prejudice the rights of plaintiffs' class in the EAP program. Plaintiffs' motion for summary judgment is granted and defendant's motion to dismiss or for summary judgment is denied.