[File No. 6475.]

BISMARCK HOSPITAL and Deaconesses Home, Respondent, v. GORDON T. HARRIS, Appellant.

(280 N. W. 423, 116 A.L.R. 1274.)

Opinion filed June 10, 1938.

*Hyland & Fosler,* for appellant.

*Dullam & Young,* for respondent.

SATHRE, J. This is an appeal from an order of the district court overruling a demurrer to the first cause of action of plaintiff's complaint.

. The complaint in this action sets forth three causes of action, but only the first cause needs to be considered for the purpose of this appeal. The first cause of action is as follows:

"1. That it is now, and during all the times hereinafter mentioned

has been, a corporation, organized and existing under and by virtue of the laws of the State of North Dakota, owning and operating a hospital at Bismarck, North Dakota.

"2. That one Lulu E. Harris, on or about the 7th day of February, 1935, became very ill, and wholly unable to care for herself, and she was removed to the hospital owned and operated by plaintiff at Bismarck, North Dakota, for nursing, care, room, board and such treatment as the hospital could give her; that she was received and remained a patient of such hospital from February 7, 1935 until her death on the 2nd day of September, 1936, and during all of said time this plaintiff furnished her nursing, hospital care, medicine, board and room, all of the reasonable value and agreed price of $1,588.30, and that though long since due and payment thereof has been demanded, no part has been paid except the sum of $25.00 paid on the 18th day of February, 1936, by the defendant.

"3. That said Lulu E. Harris, during all the times herein mentioned, was a citizen and resident of the City of Bismarck, Burleigh County, North Dakota, and so had been for many years preceding her death; that said Lulu E. Harris was, during all of said time, especially during the time she was a patient of the Bismarck Hospital, as hereinbefore stated, a poor person and unable to maintain and support herself by work; that the defendant is a son of and the only child of said Lulu E. Harris, deceased, and such defendant was, and is, of sufficient ability to maintain his mother during her last illness, and he was and is under obligation to so maintain his mother, but has neglected and refused so to do."

The defendant demurred to the complaint upon three grounds, viz.:

First, that in the three separate causes of action there is a defect of parties defendant.

Second, that in the three different causes of action several causes of action have been improperly united.

Third, that neither of said three separate causes of action in plaintiff's complaint states facts sufficient to constitute a cause of action.

This appeal having been taken from the order of the District Court overruling the demurrer to the first cause of action, it is obvious that the first two grounds need not be considered, since the third ground

only is pertinent here, viz.; that the complaint does not state facts sufficient to constitute a cause of action.

The trial court overruled the demurrer and based his ruling on § 4431 of the Compiled Laws of 1913, which reads as follows: 4431 —"Support of the Poor. It is the duty of the father, the mother and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding."

In overruling the demurrer to the first cause of action, the trial court relied on the South Dakota case of McCook County v. Kammoss, 7 S. D. 558, 64 N. W. 1123, 31 L.R.A. 461, 58 Am. St. Rep. 854.

In the South Dakota case the adult children of an indigent person had neglected and refused to contribute to his maintenance and support. In such cases the statutes of that State require the county to furnish the necessary support. This the county did and thereafter brought action against the adult children to recover the amount paid for the support and maintenance so furnished. The action was brought under a statute (S. D. Comp. Laws § 2612) which is as follows: "It is the duty of the father, the mother and the children of any poor person, who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding."

The section quoted is identical with § 4431 of the North Dakota Compiled Laws of 1913. This statute first appeared in the Revised Codes of Dakota Territory of 1877 as § 97 of the Civil Code, and in the Compiled Laws of Dakota Territory for 1887 it appears as § 2612. It became the law of the state when North Dakota was admitted into the Union in 1889.

In passing upon the question, the South Dakota Court said: "If, under such circumstances, the county, under the direction of the law, furnishes necessaries to the indigent and helpless father, we think, upon principle, it ought to and may recover therefor against the children whose duty it was to furnish the same, but who neglected and refused so to do."

See also Tesch v. Tesch, 65 S. D. 637, 277 N. W. 328.

In the case at bar the action was brought by the plaintiff hospital,

a corporation, on the theory that § 4431, quoted herein, creates a liability upon the defendant to maintain and support his mother by reason of his relationship to her as her son, and that no express agreement on his part is necessary to create such liability. This statute fixes the reciprocal duty and liability between parent and child, and where the necessity exists, either party may maintain an action against the other. It is intended primarily for the benefit of indigent parents or children, and the right of action exists in favor of one against the other. The question presented here is whether such right of action extends to third parties who may have furnished necessary relief where there is no express or clearly implied agreement or promise by the party subsequently sought to be charged. In other words, where a stranger, or a third party, furnished relief to an indigent parent or child, may such third party under § 4431 supra, recover in an action brought directly against the party legally liable; or will it be necessary to proceed under the Poor Laws, which require that the indigent person, or someone in his behalf, must first make application to the overseers of the poor or public authorities to have his needs investigated before relief may be granted.

It would seem that said § 4431 is independent of the Poor Laws. It has been in force since long prior to the enactment of the present Poor Laws of the State; it has never been amended nor has it been repealed by direct statute or by implication. Such being the situation, it seems clear that § 4431 is not a part of the Poor Laws, but that its direct purpose is to create, as between parent and adult children, a legal obligation; an obligation which previously was only a moral obligation resting on close blood relationship and humanitarian considerations.

This section in almost the identical form of § 4431, is found in the draft of a Civil Code for the state of New York as § 84, p. 24, prepared by the Code Commissioners of that state in 1862. While this Code was not adopted by the state of New York, it later formed the foundation of the Codes of California, Montana and North Dakota.

The following note by the Code Commissioners, appended to said section, is enlightening as bearing upon the history and purpose of this statute:

"The provisions of the Poor Laws declare the duty of parents and

children to support each other, 1 R. S., 614, ¶ 1; but it is held that in the case of the duty of children the obligation is purely statutory, and no other remedy exists except that provided by proceedings under those laws.

"It is the object of this section to recognize the obligation as a ground of legal liability independent of those provisions."

In the cases of Benson Hospital Asso. v. Dornfeld (Tryon v. Moyer) 130 Minn. 198, 153 N. W. 307, L.R.A.1915E, 844, an action was brought by the plaintiffs Tryon and Benson Hospital Association against the Town of Moyer and against Ernest Dornfeld for medical and hospital services rendered to one Rosie Dornfeld, granddaughter of the defendant Ernest Dornfeld.

The statute of the state of Minnesota (Gen. Stat. 1913, § 3067) upon which the action was brought is as follows:

"Every poor person who for any reason is unable to earn a livelihood shall be supported by his children, parents, brothers and sisters, grandchildren, or grandparents; and relatives having sufficient ability shall be called on for such support in the order above named. . . . Every such relative who refuses or fails to support any poor person whom he is bound by law to support, when directed by the board or council of the county, town, city, or village in which such person has a settlement, shall forfeit and pay to such county, town, city, or village, for the use of the poor thereof, fifteen dollars per month, to be recovered in any court having jurisdiction."

Two issues were presented in that case as follows:

1. "Can a stranger who has furnished support or medical care and treatment to an indigent child recover from a relative upon whom a statutory duty rests to furnish such support and care in an action directly against such relatives?

2. "Can such stranger recover against such relative without giving notice to such relative of such support, without the relative having notice that such support is being given, and without any fact from which it can be inferred that such relative has either directly or impliedly agreed to pay for such support or service?"

Referring to this statute, the court, speaking through Justice Schaller, said: "This statute imposes upon the relatives named and in the order named a duty to support their indigent relatives. The duty is

created by the statute, and does not depend upon contract. It is a duty which devolves primarily upon the relatives; it cannot be evaded or shifted upon others. Manthey v. Schueler, 126 Minn. 87, 147 N. W. 824, Ann. Cas. 1915D, 241."

In the cases of Benson Hospital Asso. v. Dornfeld (Tryon v. Moyer) 130 Minn. 198, 153 N. W. 307, L.R.A.1915E, 844, supra, the question before the court was whether the services rendered to the indigent relative were necessary, urgent and admitted of no delay; and having so found, the court was of the opinion that the proposition as to whether or not a legal duty is cast upon persons who are able to support their indigent relatives was not open to question. It was held, therefore, that there was a legal duty on the part of the defendant Dornfeld to support and care for his granddaughter, and that Benson Hospital Association, plaintiffs, having performed necessary medical and hospital services to the indigent relative, were entitled to recover the reasonable value of the services performed by them, and that under the provisions of the statute quoted and the facts, an action for the recovery thereof could be brought directly against the grandfather Dornfeld.

The evident purpose of the Minnesota statute is to fix upon relatives legal liability to furnish support, maintenance and relief to their relatives within certain specified degrees of kinship; and that is the purpose of § 4431 of the Compiled Laws of our State.

Under the Minnesota statute, quoted herein, the Supreme Court of that state in the cases of Benson Hospital Asso. v. Dornfeld (Tryon v. Moyer) supra, recognized the right of a third party to bring action directly against one whose liability was fixed by said statute, without regard to the general Poor Laws. The facts alleged in the complaint in the case at bar are similar to the facts in the Minnesota cases, and we believe that the holding in those cases is sound and should be adopted here.

In the case at bar the action was brought against the relative of the indigent, and the complaint alleges, among other things, that "Lulu E. Harris on or about the 7th day of February, 1935, became very ill, and wholly unable to care for herself, and she was removed to the hospital owned and operated by plaintiff at Bismarck, North Dakota, for nursing, care, room, board and such treatment as the hospital could

give her; . . . that she was "a poor person and unable to maintain and support herself by work; that the defendant is a son of and the only child of said Lulu E. Harris, deceased, and such defendant was, and is, of sufficient ability to maintain his mother during her last illness, and he was and is under obligation to so maintain his mother, but has neglected and refused so to do."

Section 4431 affords a remedy for the benefit of the needy and indigent persons therein mentioned, and to which resort may be had without regard to the Poor Laws. It follows that third persons may furnish relief directly to needy persons who fall within the classes designated in the statute. If the person against whom liability is sought to be established refuses to pay for services rendered, an action may be brought against him by such third party. In such action the plaintiff must establish the kinship of the parties, the financial ability of the person sought to be charged, the indigence of the person to whom relief was furnished, the reasonable value of the services, and that such relief was an immediate necessity.

We are of the opinion that, liberally construed, the complaint on its face states a cause of action and that the demurrer was properly overruled.

In the second part of their brief, counsel for defendant and appellant challenge the jurisdiction of the court over the person of the defendant. This question does not arise upon the record and is not before this court, and therefore cannot be considered here.

Order affirmed.

CHRISTIANSON, Ch. J., and BURR, J., and HOLT, Dist. J., concur.

Mr. Justice NUESSLE, being disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of First Judicial District, sitting in his stead.

MORRIS, J. (dissenting). At common law there is no legal obligation resting upon a child to support a parent and in the absence of a positive statute a child is not bound to pay for necessaries furnished to an indigent parent without a contract on the part of such child to pay for them. § 4431, N. D. Comp. Laws, 1913, abrogates the common law rule to the extent of making it "the duty of the father, the

mother and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability." Applying that statute to this case we find that it imposed a duty upon the son to maintain the mother to the extent of his ability. This is a duty to the mother which she might have enforced in a proper action. In the absence of an express statute the law does not imply a promise on the part of the child to pay for necessaries furnished without his request to a parent who is poor and unable to support herself. The Supreme Court of California, in construing a statute identical with ours, held, in the case of Paxton v. Paxton, 150 Cal. 667, 89 P. 1083, that the person to whom the duty is owed under the statute may compel the performance of such duty by an action in equity. Thus in this case the mother might by such an action have compelled the son to maintain her to the extent of his ability.

The majority opinion goes much farther and spells out of the statute not only a duty from the son to the mother, but also a *liability* on the part of the son to pay for hospitalization furnished to the mother by a third party in the absence of a promise on the part of the son to pay therefor. As was said in Belknap v. Whitmire, 43 Or. 75, 72 P. 589, "The statute does not authorize a volunteer who has afforded relief to an indigent party to maintain an action therefor against a child of such party as upon an implied contract arising merely from the moral duty which the child owes to support the parent." See also Lebanon v. Griffin, 45 N. H. 558. In Gray v. Spalding, 58 N. H. 345, it is said that, "Persons of sufficient ability are, by statute, liable to maintain their parents when standing in need of relief. But the statute empowering a town, that performs its duty of relieving such parents, to enforce the liability of the children, does not authorize a volunteer to enforce it."

McCook County v. Kammoss, 7 S. D. 558, 64 N. W. 1123, 31 L.R.A. 461, 58 Am. St. Rep. 854, is cited in the majority opinion. In that case the county being under legal obligation so to do furnished support to an indigent father and brought suit against his children, who were also under statutory obligation to support him. In this case it does not appear that the hospital was under any legal obligation as was the county in the South Dakota case to care for the indigent

parent. Further, it does not appear that the parent was received as a charity patient or that the hospital is a charitable institution.

The majority opinion also cites the case of Benson Hospital Asso. v. Dornfeld (Tryon v. Moyer) 130 Minn. 198, 153 N. W. 307, L.R.A. 1915E, 844, wherein the court held that a stranger might recover under a Minnesota statute for hospitalization and medical service furnished an indigent relative. The court says that the duty to support indigent relatives named in the statute is a duty created by statute and does not depend upon contract. I am unable to follow the reasoning by which the Minnesota court then arrives at the conclusion that a stranger may perform the duty which the statute places upon the relatives and recover from the relatives therefor. In that case the court quotes from Robbins v. Homer, 95 Minn. 201, 103 N. W. 1023, which this court discusses and differentiates in Mandan Deaconess Hospital v. Sioux County, 63 N. D. 538, 248 N. W. 924. In the latter case this court rejected the contention that the statutes providing for the care of the poor placed a liability upon the county to pay private parties for emergency medical and hospital care rendered to an injured indigent in the absence of an authorization by the proper authorities.

One reason which impels me to disagree with the majority opinion is the fact that the last sentence of § 4431, supra, which is not contained in the Minnesota statute and which provides "the promise of an adult child to pay for necessaries previously furnished to such parent is binding." Under the construction adopted by the majority opinion this sentence becomes entirely superfluous. If § 4431 fixes the liability upon a child to pay for maintenance furnished by a stranger to an indigent parent, it was wholly unnecessary for the legislature to provide that the promise of the child to pay for necessaries previously furnished is binding, for the liability would be fixed by the statute and no promise would be necessary to obligate the child.

It is also important to note that § 4431 was originally § 97 of the Civil Code of 1877 and a part of the chapter dealing with the subject of parent and child. Section 98 of the Civil Code enacted at the same time and which is now § 4432, N. D. Comp. Laws, 1913, provides, "If a parent neglects to provide articles necessary for his child, who is under his charge, according to his circumstances, a third person may

in good faith supply such necessaries and recover the reasonable value thereof from the parent." It is significant that the legislature thus specifically made the parent liable for the reasonable value of necessaries furnished his child by a third person, but made no provision for the liability of a child for necessaries furnished an indigent parent in the absence of the child's promise. We are not justified in reading into the statute a liability which the legislature obviously intentionally omitted. The demurrer to the first cause of action should be sustained.