AMERICANA HEALTHCARE CENTER, A DIVISION OF MANOR HEALTHCARE CORPORATION, Plaintiff and Appellee,

v.

Robert L. RANDALL, Individually and as Trustee of a certain Maintenance Agreement between Juanita A. Randall and Robert L. Randall, as Trustee, Defendant and Appellant.

No. 18186.

Supreme Court of South Dakota.

Argued Aug. 31, 1993.

Decided March 16, 1994.

Dennis Maloney of Maloney and Maloney, Aberdeen, for plaintiff and appellee.

Ronald A. Wager and Kennith L. Gosch of Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for defendant and appellant.

Mark Barnett, Atty. Gen., Steve Cowan Asst. Atty. Gen., Pierre, for amicus curiae, State of S.D.

AMUNDSON, Justice.

Robert Randall appeals the trial court's judgment in favor of Americana Healthcare Center for the costs of care for his elderly mother pursuant to SDCL 25–7–27. We affirm.

## FACTS

Appellant Robert Randall (Robert) is the only child of Harry and Juanita Randall. Although he grew up in Aberdeen, Robert has not resided in South Dakota since in 1954. Robert is now a resident of the District of Columbia.

Robert's father died in 1981. Four years after his death, Robert's mother Juanita hired counsel to draft a trust document entitled "Juanita Randall Maintenance Trust Agreement." This irrevocable trust named Juanita as the income beneficiary and Robert as both trustee and residual beneficiary. The trust principal consisted of Juanita's house which was valued at approximately $30,000 and $100,000 in mutual funds. The trust did not grant the trustee authority to invade the principal for the benefit of Juanita. Juanita was ninety-two years old when she executed the trust document in 1985.

Following an accident which required Juanita's hospitalization, Robert came back to Aberdeen and checked into various nursing homes to place his mother. In the fall of 1990, Juanita was admitted to the Arcadia Unit of Americana Healthcare Center (Americana) in Aberdeen, South Dakota. The Arcadia Unit is specifically designed to deal with individuals who possess mental problems such as Alzheimer's disease. Robert completed and signed all the necessary documents under the power of attorney from his mother and made a two-month advance payment to Americana from his mother's checking account. He also listed himself as the person who should be sent the monthly statements from the nursing home.

At that time, in view of Juanita's limited income, Robert discussed the possibility of financial assistance from Medicaid with various Americana personnel. Later that month, Robert completed an application for long-term care medical assistance for Juanita. In November, the South Dakota Department of Social Services (DSS) denied this application because Juanita had not exhausted all of her assets.[1] At the time, Juanita's only assets

---

1. In the November 30, 1990, letter of denial, Robert was advised as follows: "Therefore, until you can provide the Department with [more detailed financial information], the application will be rejected, and *you will be responsible for Private pay to the Nursing facility.*" (Emphasis added.)

were the house and mutual funds which had been conveyed to the trust.

Juanita's bill was two months delinquent at the time Americana learned of the rejected Medicaid application. Americana then contacted Robert about his mother's unpaid bills. Because of Juanita's financial position, Robert, as her legal guardian, filed a Chapter 11 bankruptcy on her behalf in the District of Columbia. The District of Columbia court dismissed this bankruptcy proceeding after Americana refused resolution under bankruptcy. Robert then filed a Chapter 7 bankruptcy petition which was transferred to South Dakota and discharged the Americana bill for Juanita individually and Robert, as her guardian, on October 30, 1991. Meanwhile, Americana filed this suit to collect the unpaid bills.[2]

While Juanita stayed at Americana she received social security payments and income from the trust. While the amount of social security benefits is not shown in this record, Robert estimated that the trust produced about $5000–$6000 income per year. This income was used by Robert to pay legal fees incurred by forming the guardianship, the bankruptcy proceedings and the unsuccessful pursuant of Medicaid benefits.

In June of 1991, Robert was requested to remove his mother from Americana because of the unpaid bills. Despite this request, Juanita remained at Americana until her death on December 8, 1991. At the time of Juanita's death, the unpaid balance for her care was $36,772.30.

Americana notified Robert of his mother's unpaid bills on many occasions. Robert was named as a party to this suit in three capacities: individually, as trustee, and as guardian of the person and estate of Juanita Randall. Americana alleged that Robert had agreed to pay his mother's nursing home bill at the time of her admission to Americana's facility.

Prior to trial, the court granted Robert's motion for summary judgment as to Robert Randall as guardian of the person and estate of Juanita because of the discharge in bankruptcy, but denied summary judgment to Robert Randall individually and as trustee of the Juanita A. Randall Maintenance Trust. At the summary judgment hearing, Americana raised its claim under SDCL 25–7–27 for the first time.[3]

On September 3, 1992, Robert renewed his motion for summary judgment on the additional ground that SDCL 25–7–27 was unconstitutional and requested a continuance. Robert also notified the South Dakota Attorney General that the constitutionality of SDCL 25–7–27 was being challenged. The trial court stated that it was premature to rule on the constitutionality of the statute at that time and denied the continuance.

A court trial was held September 22, 1992. At the conclusion of Americana's case, Robert moved for directed verdict on the grounds that Americana had failed to establish either an oral or written contract to act as guarantor for his mother's nursing home bills. Additionally, Robert requested a directed verdict because Americana failed to submit any evidence regarding his financial ability to pay the nursing home bill pursuant to SDCL 25–7–27. The trial court granted Robert's motion for directed verdict on Americana's claims for liability based on an oral or written contract of guarantee. However, the court denied Robert's motion for directed verdict on the SDCL 25–7–27 claim and allowed Americana to orally amend their complaint to include the SDCL 25–7–27 claim. The trial court found in favor of Americana on its SDCL 25–7–27 claim. This appeal followed.

### ISSUES

1. Was Robert Randall liable for his mother's nursing home bill under SDCL 25–7–27?

2. During this entire time, Americana cared for Juanita without compensation.

3. SDCL 25–7–27 states:
 Every adult child, having the financial ability so to do shall provide necessary food, clothing, shelter or medical attendance for a parent who is unable to provide for himself; provided that no claim shall be made against such adult child until notice has been given such adult child that his parent is unable to provide for himself, and such adult child shall have refused to provide for his parent.

2. Does SDCL 25–7–27 deny Robert Randall equal protection of the law?

3. Does SDCL 25–7–27 deny Robert Randall his right to due process?

4. What are reasonable costs for Juanita Randall's nursing home care?

## ANALYSIS

### ISSUE 1

Was Robert Randall liable for his mother's nursing home bill under SDCL 25–7–27?

■ First, Robert argues that the trial court abused its discretion when it allowed Americana to amend its complaint to include the SDCL 25–7–27 claim. Before a court allows a complaint to be amended, it must determine whether the opposing party will be prejudiced by the amendment; i.e., did he or she have a fair opportunity to litigate the issue, and could he or she have offered any additional evidence if the case had been tried on a different issue. *Beyer v. Cordell* 420 N.W.2d 767 (S.D.1988); *Bucher v. Staley* 297 N.W.2d 802 (S.D.1980); SDCL 15–6–15. The trial court's decision to permit amendment of pleadings will not be disturbed on appeal absent a clear abuse of discretion which results in prejudice to the nonmoving party. *Tesch v. Tesch,* 399 N.W.2d 880 (S.D.1987). Robert was aware of the statutory claim two months before trial and had sufficient time to defend the claim despite being denied a continuance. He has not demonstrated that he has been unfairly prejudiced by this amendment. Prior to trial, Robert notified the South Dakota Attorney General that the constitutionality of SDCL 25–7–27 would be contested in this action. Therefore, it was proper for the trial court to amend the complaint to include the SDCL 25–7–27 claim.

At common law, an adult child was not required to support a parent. Such an obligation could only be created by statute. *McCook County v. Kammoss,* 7 S.D. 558, 64 N.W. 1123 (1895); 67A C.J.S. "Parent & Child" § 97 (1985). Such statutes trace their beginnings from the Elizabethan Poor Law of 1601 in England. *Swoap v. Superior*

*Court,* 10 Cal.3d 490, 111 Cal.Rptr. 136, 516 P.2d 840, 848 (1973). South Dakota adopted the current version of SDCL 25–7–27 in 1963.

The North Dakota Supreme Court considered a claim premised on a similar statutory provision in *Bismarck Hospital & Deaconesses Home v. Harris,* 68 N.D. 374, 280 N.W. 423 (1938). That court stated:

If the person against whom liability is sought to be established refuses to pay for services rendered, an action may be brought against him by such third party. In such action, the plaintiff must establish the kinship of the parties, the financial ability of the person sought to be charged, the indigence of the person to whom relief was furnished, the reasonable value of the services, and that such relief was an immediate necessity.

*Id.* 280 N.W. at 426.

■ SDCL 25–7–27 requires an adult child to provide support only when they have the financial ability to do so. Robert claims that this is constitutionally defective because it is unclear when financial ability is to be determined. However, under the facts of this case, a fair reading of the statute shows that the financial ability of the adult child may be determined at any time there is an outstanding debt which has not been barred by the statute of limitations. This certainly seems appropriate where the parent continues to receive care while the child is in control of, and is expending, the parent's assets which are available to pay the debt.

■ Although Robert could not pay his mother's bills from his own funds, he certainly had the ability to pay after the trust assets had been distributed to him.[4] At trial, it was proven that Robert had received approximately $100,000 in mutual funds from the maintenance trust at his mother's death. Therefore, under the facts of this case, the trial court was correct in holding Robert liable under SDCL 25–7–27.

---

**4.** Approximately $30,000 of proceeds from sale of the house have been held in escrow pending

disposition of this case.

## ISSUE 2

Does SDCL 25–7–27 deny Robert Randall equal protection of the law?

 Robert claims SDCL 25–7–27 violates equal protection because it discriminates against adult children of indigent parents. The trial court held that it did not. Any legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the act is clearly and unmistakably shown beyond a reasonable doubt to violate fundamental constitutional principles. *Accounts Management, Inc. v. Williams,* 484 N.W.2d 297, 299 (S.D.1992) (citing *In re Request for Opinion of Supreme Court,* 379 N.W.2d 822, 825 (S.D. 1985); *McMacken v. State,* 320 N.W.2d 131, 133 (S.D.1982); *South Dakota Ass'n. etc. v. State,* 280 N.W.2d 662, 664–65 (S.D.1979)). Since Robert challenges the constitutionality of the statute, he bears the burden of proving the act unconstitutional. *Id.*

 "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985). However, Robert argues that this statute should be analyzed under the heightened substantial relationship standard used by this court in *State ex rel. Wieber v. Hennings,* 311 N.W.2d 41, 42 (S.D.1981), because it discriminates based on parentage of the child. In *Wieber,* this court followed the United States Supreme Court's application of the substantial relationship standard for legislative classifications based on legitimacy. In this case legitimacy is not an issue, therefore Robert's position is incorrect. No quasi-suspect classification or fundamental right has been implicated in this case, thus, a rational basis analysis will be applied to this support statute. "Under the rational basis standard, the court accords great deference to the constitutionality of a statute even if imperfect results are achieved." *Feltman v. Feltman,* 434 N.W.2d 590, 592 (S.D.1989).

 Under the rational basis test, South Dakota uses a two-pronged analysis when determining whether a statute violates the constitutional right to equal protection under the laws. *Lyons v. Lederle Laboratories,* 440 N.W.2d 769, 771 (S.D.1989). First, does the statute set up arbitrary classifications among various persons subject to it and, second, whether there is a rational relationship between the classification and some legitimate legislative purpose. *Id.*

 When applying the first prong of the *Lyons* test, it is clear that SDCL 25–7–27 does not make an arbitrary classification. Rather, "it is the moral as well as the legal duty in this state, of every child, whether minor or adult, to assist in the support of their indigent aged parents." *Tobin v. Bruce,* 39 S.D. 64, 67, 162 N.W. 933, 934 (1917) (citing Section 118, Civil Code; *McCook County v. Kammoss,* 7 S.D. 558, 64 N.W. 1123 (1895)). An adult child is liable under SDCL 25–7–27 upon the same principle that a parent is liable for necessary support furnished to their child. *Kammoss,* 7 S.D. 558, 64 N.W. 1123.

Much like the plaintiffs in *Swoap v. Superior Court of Sacramento County,* Robert argues that the only support obligations which are rational are those arising out of a relationship voluntarily entered into. 10 Cal.3d 490, 111 Cal.Rptr. 136, 516 P.2d 840, 851 (1973). For instance, the obligation to support a child or spouse is at least initially voluntary, therefore, it is rationally based. Robert argues that, since children do not voluntarily enter into the relationship with their parents, it is arbitrary to force this obligation upon them. *Id.* The fact that a child has no choice in the creation of a relationship with its parents does not per se make this an arbitrary classification. The fact that an indigent parent has supported and cared for a child during that child's minority provides an adequate basis for imposing a duty on the child to support that parent. *Id.*

Robert also claims that this classification is unconstitutional because it is based on wealth. However, economic-based discrimination has been upheld by this court. *Feltman,* 434 N.W.2d 590; *Matter of Clark,* 340 N.W.2d 189 (S.D.1983). Justice Henderson wrote in *Matter of Clark,*

Any [statute] adopted by South Dakota must be upheld as long as it is rationally based and free from invidious discrimination. South Dakota ... might not have adopted a perfect classification through its [statute]. This does not make the state [statute] invalid, for the regulation need not result in mathematical precision, and may well have some inequality without offending the Constitution. Simply because there is another method to attack a problem does not mean that the state's method was wrong.

*Id.* at 192 (citations omitted).

It is certainly reasonable to place a duty to support an indigent parent on that parent's adult child because they are direct lineal descendants who have received the support, care, comfort and guidance of that parent during their minority. If a parent does not qualify for public assistance, who is best suited to meet that parent's needs? It can reasonably be concluded that no other person has received a greater benefit from a parent than that parent's child and it logically follows that the adult child should bear the burden of reciprocating on that benefit in the event a parent needs support in their later years. *Swoap,* 516 P.2d at 851. Consequently, this statute does not establish an arbitrary classification.

■ The second prong of the test requires a rational relationship between this classification and some legitimate state interest. Clearly, this state has a legitimate interest in providing for the welfare and care of elderly citizens. SDCL 25–7–27 prevents a parent from being thrown out on the street when in need of specialized care. Placing this obligation for support on an adult child is as legitimate as those interests recognized by this court in the past when applying the rational basis test. We have found legitimate state interests to exist under constitutional challenges in the support of children, *Feltman,* 434 N.W.2d 590; balancing the treatment of debtors and creditors, *Accounts Management, Inc.,* 484 N.W.2d 297; edu-

cation, *Birchfield v. Birchfield,* 417 N.W.2d 891 (S.D.1988); public safety, *Swanson v. Dept. of Commerce & Regulation,* 417 N.W.2d 385 (S.D.1987); preventing the adjudication of stale claims, *Janish v. Murtha* 285 N.W.2d 708 (S.D.1979); and protecting the citizens from drunk drivers, *State v. Heinrich,* 449 N.W.2d 25 (S.D.1989).

■ The primary purpose of this statute is to place financial responsibility for indigent parents on their adult children when a parent requires such assistance. Although the legislature repealed similar laws in the past,[5] SDCL 25–7–27 has survived. Therefore, SDCL 25–7–27 serves a legitimate legislative interest, especially under the facts of this case, where indigency was voluntarily created by the trust and there would have been sufficient assets to pay for the parent's care had the trust not been created. Robert has not been denied his right to equal protection under the law.

## ISSUE 3

Does SDCL 25–7–27 deny Robert Randall his right to due process?

Robert argues that SDCL 25–7–27 denies him of the right to due process. In support of his argument, he cites *Commonwealth v. Mong,* 160 Ohio St. 455, 52 O.O. 340, 117 N.E.2d 32 (1954). *Mong* involved an Ohio resident who was not held responsible for the support of his father, a Pennsylvania resident. However, in *Mong,* the adult child was not liable for his indigent parent because Ohio law prohibited a parent who has abandoned their children to later assert their parental right to support from that child. *Id.* 117 N.E.2d at 33.

Robert, a resident of the District of Columbia, argues that Americana cannot enforce the South Dakota support statute against him because the District of Columbia has repealed its parental support statute. Robert has not been denied due process simply because the District of Columbia does not have a support statute similar to South Da-

---

5. *See* SDCL 25–7–6, Duty of parents and children to support poor person unable to work—Child's promise to pay for necessaries furnished to parent. Repealed by 1991 S.D.Sess.L. ch. 212. *See* *also* SDCL 25–7–29, Nonsupport of parent by adult child as misdemeanor—Notice required. Repealed by 1986 S.D.Sess.L. ch. 26, § 5.

kota's. Unlike the situation in *Mong*, District of Columbia does not prohibit an action for support of a parent, it has simply repealed the vehicle for such action in the District of Columbia.

■ Robert claims a violation of due process exists because the statute forces a nonresident to pay for a resident parent's expenses. Although Robert is not a resident of South Dakota, he has had numerous contacts with the state. He had a power of attorney pertaining to his mother's checking account in Aberdeen, South Dakota. He later became her legal guardian with her residency in South Dakota. As trustee, he held legal title to a house in South Dakota. He visited his mother on several occasions at Americana in Aberdeen. He also maintained a bankruptcy action in the State of South Dakota as guardian for his mother. With these contacts it is obvious that the South Dakota courts have properly asserted jurisdiction over this matter. Residency or, in this case, the lack thereof does not deprive Robert of due process.

■ Robert also argues that he was denied due process because he was not given notice that "his parent is unable to provide for herself" as required by SDCL 25-7-27. Where the statute contains a notice provision, failure to provide timely notice precludes any claim against an adult child for support of his parent on a due process basis. *Morris County Welfare Bd. v. Gilligan*, 130 N.J.L. 83, 31 A.2d 805 (Err. & App.1943); *Mallatt v. Luihn*, 206 Or. 678, 294 P.2d 871, 877–79 (1956). SDCL 25-7-27 does not specify the manner in which notice shall be given. Therefore, it should be assumed that it must be reasonable notice. This court discussed what was constitutionally required for reasonable notice in *First Nat. Bank of Eden v. Meyer*, 476 N.W.2d 267, 269 (S.D.1991):

> In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court in determining what notice is constitutionally adequate to satisfy due process stated:
>
> > An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

■ In this case, the evidence indicates that Robert had complete control over his mother's financial affairs. He was notified by Americana on several occasions that his mother's bill remained unpaid. As his mother's guardian, it was Robert's responsibility to provide for his mother's needs including her nursing home bills. Robert's assertion that Americana's notices were given to him only as trustee or guardian and never individually does not withstand scrutiny. Robert had sufficient notice even though Americana did not explicitly state that he was responsible for his mother's expenses. Surely, a sophisticated person such as Robert was aware that his mother's bills were delinquent and Americana was not in the business of providing services free of charge. This court concludes he received constitutionally adequate notice.

■ Robert further argues that the statute is unconstitutionally vague because it lacks specific notice requirements. Statutes are not unconstitutionally vague unless people of common intelligence must guess at their meaning and differ as to their application. *State v. Havens*, 264 N.W.2d 918 (S.D. 1978).

> The statutes of [other] states go further and provide a procedure by which such children may be compelled to supply future support. Ours does not. Whether the omission was an oversight or deliberate we do not know.

*Kammoss*, 7 S.D. at 558, 64 N.W. at 1123.

■ Under the circumstances, Americana furnished care to Juanita Randall relying on the representations made by her son, Robert. Therefore, it ought to be able to recover from the child who had control of the purse strings but chose to expend the assets to avoid the bill rather than pay for his mother's required care. Our conclusion is that given its plain and ordinary meaning, this statute is not

unconstitutionally vague and was properly applied in this case.

## ISSUE 4

What are the reasonable costs for Juanita Randall's nursing home care?

 Robert's final argument is that the trial court's award was unreasonable because, had Juanita secured Medicaid assistance Americana would have accepted a lesser amount for its services. Robert never presented this issue to the trial court. "Issues not presented at the trial court level are not properly before this Court." *Weber v. South Dakota Dept. of Labor, Etc.*, 323 N.W.2d 117, 120 (S.D.1982) (citing *Weaver v. Boortz*, 301 N.W.2d 673 (S.D.1981); *Estate of Assmus*, 254 N.W.2d 159 (S.D.1977)). Therefore, this issue is waived.

In conclusion, we affirm the trial court's decision in all respects because its findings are not "clearly erroneous," *Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970), and did not contain any mistakes of law. *Permann v. South Dakota Dep't. of Labor*, 411 N.W.2d 113, 118–19 (S.D.1987).

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.