2003 SD 61

**ACCOUNTS MANAGEMENT, INC.,**
**Plaintiff and Appellant,**

v.

**Jon NELSON, Barb Nelson, Robert Nelson, and Jane/John Does 1–5, Defendants and Appellees.**

No. 22578.

Supreme Court of South Dakota.

Considered on Briefs March 24, 2003.

Decided May 21, 2003.

Robert R. Nelson, Sioux Falls, for plaintiff and appellant.

Gale E. Fisher, Sioux Falls, for defendants and appellees.

ZINTER, Justice.

[¶ 1.] James Nelson was admitted to McKennan Hospital, where he remained until his death. Eight days prior to his admission, approximately $1.2 million was deposited into a trust for Nelson's needs. Not knowing of the trust, McKennan applied for and received Medicare benefits on his behalf. After Nelson's death, McKennan filed a claim against his estate for the remaining expenses not covered by Medicare. This claim was paid by the estate, and McKennan released the estate from all further claims. However, in a subsequent Medicare audit, it was learned that Nelson was not entitled to the Medicare benefits McKennan had received. Medicare therefore recouped the payment it made for Nelson's hospital costs, and McKennan initiated this suit against Nelson's adult children (hereinafter referred to as the children) for the hospital bill. McKennan asserted that the children were liable for their father's hospital bill "in equity" and under a statute making adult children liable for support provided to a parent who is unable to provide for his or her own care. The circuit court granted the children's motion for summary judgment concluding: (1) that McKennan should have filed an amended or contingent probate claim; (2) that James was not "unable to provide for himself" within the meaning of the statute subjecting adult children to liability for the support of their parents; and, (3) that the children were not otherwise liable for the hospital bill "in equity." McKennan appeals, and we affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] James Nelson was hospitalized at McKennan Hospital[1] from December 30, 1992, until his death on February 3, 1993. Eight days before James' admission, Safeco Insurance Company deposited approximately $1,200,000.00 into a trust[2] for Nelson's benefit. The money came from a settlement of Nelson's personal injury claim. McKennan was apparently unaware[3] of this money, and it submitted a claim for Medicare reimbursement on March 4, 1993.

[¶ 3.] On March 23, 1993, McKennan received a Medicare payment of $15,657.85 on its total bill of $73,308.10. Under Part A of Medicare, McKennan was required to accept this payment as a complete satisfaction of all charges, except for certain deductible, non-covered and co-payment obligations. After the Medicare payment and all adjustments, Nelson's account balance was $42.73.

[¶ 4.] The probate of Nelson's estate was commenced by filing a petition for letters of administration in Minnehaha County on March 31, 1993. McKennan submitted this claim of $42.73 to the estate. The claim was paid by the estate on

---

1. On December 29, 1998, McKennan transferred James Nelson's account to Accounts Management, Inc. Accounts Management and McKennan are collectively referred to as "McKennan."

2. Under the terms of the trust, the trustee had the discretion to make certain distributions of income and principal for the benefit of Nelson while he was living, and was further given discretionary power to pay the expenses of Nelson's last illness and funeral. Upon Nelson's death, the trustee was directed to dis-tribute and deliver the residue of the trust to Nelson's estate.

3. McKennan states in its brief that the children represented to McKennan that they were "applying for Medicaid assistance." To support this claim, McKennan relies on an affidavit from Paul Stubbe in the McKennan Business Office. However, Stubbe's affidavit does not make this assertion. Moreover, the children dispute McKennan's assertion.

or about August 2, 1994. In return, the hospital executed a release and satisfaction, which released and discharged the estate and the estate representative of all claims and demands.

[¶ 5.] However, in February 1995, after a hospital Medicare audit, McKennan was informed that prior to his hospitalization, Nelson had exhausted his "lifetime days" allowed under the Medicare Part A program. This disqualified Nelson from Part A benefits, and the Medicare payment to McKennan was recouped by set-off against McKennan's other Medicare claims. After the set-off, Nelson's bill at McKennan was $51,736.56.[4]

[¶ 6.] On March 3, 1995, eighteen days before the estate was closed, McKennan received notice of the Medicare recoupment. Although McKennan had notice of Medicare's intention to recoup while the estate was still open, McKennan did not attempt to amend its claim or seek other relief against Nelson's estate. Instead, McKennan waited approximately thirteen months after the estate was closed before notifying the children of the current claim. McKennan eventually initiated this action against the children under SDCL 25–7–27. That statute requires adult children, having the financial ability, to provide necessary food, clothing, shelter or medical attendance for a parent "who is unable to provide for himself." *Id.* McKennan also sought recovery on unspecified equity claims.

[¶ 7.] After a hearing, the circuit court granted summary judgment to the children. The circuit court held that the children were not liable because either Nelson or his estate was able to "provide for himself" within the meaning of SDCL 25–7–27. The circuit court also found no authority to support McKennan's unspecified equitable claims for relief. McKennan appeals.

## STANDARD OF REVIEW

[¶ 8.] Our standard of review for the grant or denial of a summary judgment is well settled.

In reviewing a grant or a denial of summary judgment under SDCL 15-6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party[,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Braun v. New Hope Township*, 2002 SD 67, ¶ 8, 646 N.W.2d 737, 739 (quoting *South Dakota State Cement Plant Commission v. Wausau Underwriters Ins. Co.*, 2000 SD 116, ¶ 9, 616 N.W.2d 397, 400–01).

## DECISION

[¶ 9.] "At common law, an adult child was not required to support a parent. Such an obligation could only be created by statute. Such statutes trace their beginnings from the Elizabethan Poor Law of 1601 in England. South Dakota adopted [a statute] in 1963." *Americana Healthcare Center v. Randall*, 513 N.W.2d 566, 571 (S.D.1994) (internal citations omitted).

---

4. Notwithstanding the recoupment of the payment under Medicare Part A, McKennan received other payments under Medicare Part B for various ancillary services that a hospital is entitled to claim when a patient has exhausted his or her lifetime benefit days. As a result of these payments, Nelson's balance was $51,736.56.

[¶ 10.] The South Dakota statute requires adult children, who are financially able, to provide necessary medical care to an "indigent" parent. *Id.;* SDCL 25–7–27. At the time McKennan's action accrued, the statute provided:

> Every adult child, having the financial ability so to do shall provide necessary food, clothing, shelter or medical attendance for a parent *who is unable to provide for himself*; provided that no claim shall be made against such adult child until notice has been given such adult child that his parent is unable to provide for himself, and such adult shall have refused to provide for his parent.

SDCL 25–7–27. (Emphasis added).

[¶ 11.] Applying this statute, there is no dispute that: Jon, Barbara, and Robert Nelson are James Nelson's adult children; the adult children had the financial ability to provide necessary food, clothing, shelter or medical attendance for their father; that notice was given to the children of the claims made by McKennan under the provisions of SDCL 25–7–27; and, the children have refused to pay the debt to McKennan. The dispute is whether McKennan can show that Nelson was "unable to provide for himself" when his estate or his trust had the financial ability to pay the claim.

[¶ 12.] When McKennan's cause of action accrued, South Dakota had not adopted the Uniform Probate Code. Under the probate statutes in effect at that time, claimants had to file their claims within four months after the publication of notice to creditors, or within thirty days after the mailing of written notice.

> All claims arising upon contract whether due, not due, or contingent, are barred if not filed within four months after the

first publication of notice to creditors, or within thirty days after the mailing of notice required by § 30–21–13.1, whichever is later . . . .

SDCL 30–21–17 (repealed).

[¶ 13.] McKennan argues that Nelson was indigent and unable to provide for himself because this filing deadline expired before McKennan received notice of the Medicare recoupment. However, the probate statutes in effect at that time also allowed McKennan to amend its claim. Under those statutes, a party who filed its initial claim within the time requirements of SDCL 30–21–17, could amend its claim after the initial time to file a claim had expired. SDCL 30–21–26 provided:

> When any creditor has presented or filed his claim as provided in § 30–21–13, and within the time prescribed in § 30–21–17, the court may, for good cause shown, and on such notice as the court deems proper, and *either before or after the expiration of the time for presenting or filing claims,* permit such creditor to amend such claim, either in form or substance. No such defect in the form or contents of any claim presented or filed shall deprive a creditor of any rights whatsoever, if it satisfactorily appears that such creditor acted in good faith, and if his claim is amended as provided by this section to conform with the requirements of this chapter.

(Emphasis added).

[¶ 14.] Here, McKennan timely filed an original claim for the amount it then thought was due. Moreover, it was notified of the Medicare recoupment eighteen days before the estate was closed. Because the estate was solvent and McKennan could have amended its claim[5], Nel-

---

**5.** The trial court also held that McKennan had the option of filing a contingent claim against

the estate, which may have been collectable in the event that Medicare recouped its pay-

son's estate could have paid the bill. Therefore, Nelson was able to "provide for himself" within the meaning of the support statute.

[¶ 15.] McKennan, however, argues that it would have been fruitless to file an amended claim when McKennan received notice of Medicare's intention to recoup. McKennan contends that the release it signed would have defeated any other claim it may have made. McKennan further contends that the representative had already received authorization to disburse the balance of the estate at the time McKennan received the Medicare notice. Therefore, McKennan asserts that even if it had amended its claim, these obstacles· would have prevented it from collecting from the estate.

[¶ 16.] We are not persuaded by these hypothetical arguments. The statutes in effect at that time allowed McKennan to amend its original claim. If McKennan had done so, it could have confronted these "obstacles" before the estate was closed, and the probate court would have had an opportunity to rule on them. We decline to resolve such speculative arguments when McKennan failed to even file the appropriate claim against a solvent estate.

[¶ 17.] McKennan next argues that SDCL 25–7–27 does not specify that a parent must be "indigent," but instead, only that a parent is "unable to provide for himself." McKennan asserts that because Nelson was deceased at the time the bill became due, he was physically "unable to provide for himself." McKennan argues that physical inability should be sufficient to sustain a cause of action under 25–7–27.

[¶ 18.] McKennan's argument is without merit. As we specifically held in *Americana*, a plaintiff in an action arising under SDCL 25–7–27 must prove "the indigence of the person to whom [medical care] was furnished." *Americana*, 513 N.W.2d at 571 (quoting *Bismarck Hospital and Deaconesses Home v. Harris*, 68 N.D. 374, 280 N.W. 423 (N.D.1938)). Here, Nelson's solvent estate negates Nelson's indigence irrespective of his physical ability to pay his bills.

[¶ 19.] McKennan also raises two arguments contending that Nelson was indigent in spite of the trust funds. It first argues that Nelson was indigent because he had no control over the trust. However, we believe that McKennan's entitlement to the assets of the trust during Nelson's lifetime is irrelevant. It is irrelevant because the assets were transferred to Nelson's estate upon his death, and McKennan's claim for the cost of Nelson's last illness was a proper claim against the estate.

[¶ 20.] McKennan further argues that the terms of the trust prevented the trustee from using trust assets for hospital expenses. Again, however, it is undisputed that even if trust assets were unavailable,[6] the trust assets were paid into the estate. That estate had cash exceeding $113,000, with expenses not exceeding $34,294.80, when McKennan could have asserted its amended claim. Therefore, at the time McKennan's amended cause of action under SDCL 25–7–27 accrued, Nelson's estate was solvent. Because Nelson's estate was solvent, Nelson was not

ment. McKennan argues that such a claim would constitute Medicare fraud. McKennan also argues that contingent claims would tie up estates for up to ten years while it waited for potential audits. Because McKennan had time to amend its claim, we need not decide whether McKennan was required to file a contingent claim.

**6.** This contention appears to be incorrect under the terms of the trust.

indigent, and the availability of trust assets was irrelevant.

[¶ 21.] McKennan finally argues that the trial court erred in not granting relief based upon "equity and social policy." However, McKennan cites no authority for this argument. SDCL 15–26A–60 sets forth the requirements of an appellate brief submitted to this Court. SDCL 15–26A–60(6) provides in part "[t]he argument shall contain the contentions of the party with respect to the issues presented, the reasons therefore, and the citations to the authorities relied on." It is well settled that the failure to cite supporting authority is a violation of SDCL 15–26A–60(6), and the issue is thereby deemed waived. *State v. Pellegrino*, 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599 (quoting *State v. Knoche*, 515 N.W.2d 834, 840 (S.D.1994); *Cooper v. Hauschild*, 527 N.W.2d 908, 912 (1995); *Kanaly v. State*, 403 N.W.2d 33, 34 (S.D. 1987); *Kostel Funeral Home v. Duke Tufty Co.*, 393 N.W.2d 449, 452 (S.D.1986)). This argument was waived.

[¶ 22.] We affirm.

[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 24.] SABERS, Justice, deeming himself disqualified, did not participate.