LAURIE H. RIGGS Trustee *v.* F. HAROLD LOWEREE, ET AL.

[No. 50, October Term, 1947.]

438

*Decided December 17, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*James Morfit Mullen,* with whom was *Herbert E. Witz* on the brief, for the appellant.

*Hilary W. Gans* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

In this suit for discovery and accounting, Laurie H. Riggs, trustee, seeks recovery of income which he claims

Paul M. Burnett, trustee, deceased, improperly withheld from Sara J. Parker, *cestui que trust,* deceased

The trust was created by the will of Mary Donaldson, deceased, which bequeathed the sum of $10,000 to her niece, Sara J. Parker, for life with the power of appointment. The will was probated by the Orphans' Court of Baltimore City in May, 1920, and Burnett qualified as administrator *d. b. n. c. t. a.* of the estate. On account of a deficiency of assets, the amount he distributed to Miss Parker as life tenant was only $7,739.69. He retained this sum to invest it for her. In 1922 he purchased stock of the United States Fidelity and Guaranty Company, and he regularly turned over to her the income therefrom until 1928. Of a total of 80 shares he sold 75 shares between May 4, 1928, and September 18, 1928, for $34,677.23 and deposited that amount in his checking account in the Real Estate Trust Company. On September 29, 1928, without any court authority, he took $1,733.86 as a commission of five per cent on sales, and he deposited the rest, $32,947, in a trust account. In March, 1929, he withdrew $1,372.32 to pay the income tax on the profit from the sales. In the summer of 1929 he withdrew $25,000 for loan as call money in New York, and he also invested about $6,000 in bonds. On October 31, 1929, seven days after the crash in the New York Stock Market, he recalled the $25,000 and put it back in the trust account. On November 18, 1929, he invested the $25,000 in 300 shares of stock of the Anaconda Copper Company. He claimed that afterwards, when the price of the stock was falling, Miss Parker expressed anxiety about the investment, and he gave her the assurance that he would pay her 5 per cent interest on $25,000 for the rest of her life.. In 1932 he sold the stock at $3 a share. It also appeared that, without conferring with Miss Parker, he put $7,800 in currency in a safe deposit box, which he rented as trustee.

Miss Parker died on November 12, 1940. By her will she appointed her brothers, Robert, of Vermont, and

LeRoy, of Virginia, and her sister, Mary D. Winder, to take equal shares in the trust fund. Robert predeceased his sister. LeRoy died in February, 1941. At first Burnett took the position that the amount of the corpus was only $7,800. LeRoy's administrator, Malcolm H. MacBryde, Jr., thereupon filed suit against him in the United States District Court for the District of Maryland. Robert's personal representatives and Mrs. Winder were subsequently made parties. Although Burnett claimed that he was not responsible for the loss on Anaconda Copper, he later abandoned that position upon the advice of counsel, and declared his willingness to restore the $25,000 to the fund. He also agreed to pay back the sum of $1,733.86 which he had taken as commission, and to turn over the remaining securities in the corpus. Among these were 35 shares of U. S. F. & G. stock and one share of Fidelity and Guaranty Fire Corporation stock, which were given for the 5 shares of U. S. F. & G. stock which were not sold in 1928. It was undisputed that he had paid regularly all the income therefrom to the life tenant. All of the bonds purchased in the summer of 1929, except a $1,000 Washington and Vandermere bond, were sold or redeemed between 1929 and 1934. He was ordered to deliver the Washington and Vandermere bond. Further, the Court found that Burnett on September 9, 1930, bought 200 shares of Standard Oil Company of New York for $6,155. Although this stock had a good financial reputation at the time, it declined in market value to $1,400. The Court held that he should account for the $6,155, with interest at 6 per cent from the date of the death of the life tenant. The Court further held that he should account for $1,148.60 in cash, with interest at 6 per cent from the date of the death of the life tenant. *MacBryde v. Burnett,* D. C., 44 F. Supp. 833.

Burnett died in October, 1944. Upon the petition of Mary D. Winder, the Circuit Court of Baltimore City appointed Laurie H. Riggs trustee to bring suit for any income that may have been withheld improperly from

Miss Parker. On December 19, 1945, he entered this suit against F. Harold Loweree and First National Bank of Baltimore, executors of Burnett's estate. On March 28, 1947, the Court passed a decree dismissing the bill of complaint on the ground that the decree of the District Court is a bar to the suit. From that decree Riggs has appealed to this Court.

It is a well established doctrine that an existing final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of the rights of the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction as to the matters in issue in the first suit. Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again in a subsequent action between the same parties or their privies, regardless of whether the second action is upon the same or a different claim or demand as the earlier action. *Harryman v. Roberts*, 52 Md. 64, 77; *Christopher v. Sisk*, 133 Md. 48, 51, 104 A. 355, 356; *Ugast v. LaFontaine*, 189 Md. 227, 55 A. 2d 705. In the District Court the accounting was sought by beneficiaries in remainder of the trust fund created by the will of Mary Donaldson. In the instant case the accounting is sought by a trustee on behalf of the three legatees of the life tenant. Both suits were brought on behalf of the same parties or their privies. The fact that the two suits were brought by virtue of different wills does not prevent the application of the rule of *res judicata*. The former suit is *res judicata* as to the amount of the corpus of the trust. The instant suit is for income alleged to have been withheld from the life tenant during the period of about 12 years from 1928 until her death in 1940. It is clear, of course, that after the

decision of the District Court that none of the Monumental Life Insurance stock belonged to the corpus of the trust, no other Court can award to the life tenant any profits or income on such stock.

The chief argument on this appeal is that Burnett may have used some of the trust fund to pay the loans contracted for the purchase of the Monumental Life Insurance stock, and as a result of the commingling of funds the life tenant was entitled to income on the stock. That issue was raised and decided in the District Court. It was shown that when the Mutual Life Insurance Company was converted into the Monumental Life Insurance Company, a stock company, in February, 1928, Burnett, who became president of the company, subscribed to 1,060 shares, for which he paid $116,550. It was claimed that he used $25,000 of the trust fund to purchase 230 shares of this stock, which after stock split-ups, stock dividends and enhancement in value, were worth about $250,000, making a profit of about 1000 per cent. But the Court definitely stated that there was no evidence to show that Burnett had used any of the trust fund to carry the investment in any way or to retire any loans he had contracted in connection with the purchase of the stock. The United States Circuit Court of Appeals, which affirmed the decree of the District Court, iterated that there was no evidence to show that any of the trust fund went into the purchase of the Monumental Life Insurance stock, or was used to carry the investment or to pay off loans contracted in connection with purchase of the stock. Judge Parker said emphatically in the opinion: "Not only is this true, but the evidence shows conclusively that the trust funds, following the sale of the U. S. F. & G. stock, were invested by defendant in other stocks upon which a loss was sustained. In no aspect of the case, therefore, can it be said that the trustee used the trust funds in the purchase or carrying of the insurance stock." *MacBryde v. Burnett*, 4 Cir., 132 F. 2d 898, 901.

Appellant then insisted that Burnett did not disclose all the facts about his transactions, and that fraud prevents the operation of the doctrine of *res judicata*. We recognize the rule that where the successful party to a suit was guilty of fraud, the doctrine of *res judicata* is not applicable because, although the judgment is not open to collateral attack, the unsuccessful party may nevertheless obtain relief by a bill in equity setting up the fraud. One type of situation to which this rule applies is where a fiduciary, who has exclusive knowledge and means of information as to his receipts and disbursements, makes a fraudulent report to the court in a settlement of accounts under such circumstances that the beneficiary has no reason whatever to suspect the correctness of the report. *Restatement, Judgments,* sec. 121. In the case at bar, however, there was no proof that the decree of the District Court, which was affirmed by the Circuit Court of Appeals, had been procured by fraud. What appellant has in mind is alleged newly discovered evidence which he offers to use in a collateral attack upon the decree. The complaint that Burnett was withholding documentary evidence was also made in the District Court, but there was no evidence to justify the conclusion that the stock was impressed with a constructive trust for the benefit of the fund. The District Court admitted that it was possible to suspect that a full and frank disclosure had not been made by Burnett, but the Court did not feel warranted in basing a decree merely upon suspicion. *MacBryde v. Burnett,* D. C., 44 F. Supp. 833, 841. The doctrine of *res judicata* is applicable although the party against whom a judgment is rendered is subsequently in a position to produce better evidence so that he would be successful in a second action. The doctrine is likewise applicable although a party, who has been successful in the action, is in a position to show in a second action that he was entitled to greater relief than that which was given him by the judgment. As stated by the American Law Institute: "He has had his day in court

and he is not entitled to another opportunity to present his claim or defense. In the case of newly discovered evidence, remedies are afforded to the parties by appropriate proceedings in the trial court or in an appellate court in the original action." *Restatement, Judgments,* sec. 1.

The question whether interest is chargeable against a trustee in case of loss of trust funds at the legal rate or at the usual rate of return on trust investments is largely within the discretion of the court. In exercising its discretion, the court considers the character of the trustee's breach of trust and the degree of his fault. Where the breach of trust is not intentional, the court ordinarily gives the beneficiary the amount which he would have received if no breach had been committed. On the other hand, where a trustee commits an intentional breach of trust, he is ordinarily charged with interest at the legal rate. *Sellers v. Milford,* 101 Ind. App. 590, 198 N. E. 456; *Baxter v. Union Industrial Trust & Savings Bank,* 273 Mich. 642, 263 N. W. 762; 2 *Scott on Trusts,* sec. 207. If the trustee is chargeable with interest, he is charged with simple interest, not compound interest, unless (1) he has received compound interest, or (2) it was his duty to accumulate the income, or (3) he has received a profit which cannot be ascertained, but is presumably at least equal to compound interest. 1 *Restatement, Trusts,* sec. 207. It is reasoned that when a trustee uses trust funds in connection with his own business, and he is unable or unwilling to show what profit, if any, he has made by the use of the funds, the court should impose compound interest as a substitute for the profit he is presumed to have made by their use. *Brown v. Tydings,* 149 Md. 22, 29, 130 A. 337. We hold that where a trustee takes the risk of investing in a common stock with the hope of making a profit for the beneficiary, and a loss occurs from a depreciation in its value, the court will ordinarily impose simple interest upon the amount of the loss, especially if the beneficiary had knowledge of the investment and consented to it.

*Ringgold v. Ringgold,* 1 Har. & G. 11, 80; 18 Am. Dec. 250; *Smith v. Darby,* 39 Md. 268, 280. In this case there is no ground for imposition of compound interest, because the trustee made no profit from the use of the trust funds. As a result of his investment in the Anaconda Copper stock, he lost $24,100.

The life tenant relied upon the judgment of the trustee in making the investments, but evidently she was satisfied to take the risk in common stocks with the hope of receiving a larger income than she could obtain from high-grade bonds. The first investment in U. S. F. & G. stock realized a profit of approximately $27,000 in addition to the 5 shares still unsold. But after the next investment declined in value, the trustee paid her interest on $25,000 at 5 per cent. Judge Chesnut, who rendered the decision in the District Court, alluded to the assertion of Burnett that he had agreed to pay Miss Parker 5 per cent interest on $25,000 for the rest of her life, but, in imposing 6 per cent interest after the date of her death, he remarked: "Apparently nothing was said as to the responsibility thereafter to the beneficiaries of the fund in remainder." *MacBryde v. Burnett,* D. C., 44 F. Supp. 833, 840.

We accept the rule that an individual trustee may enter into a contract with the beneficiary to make good any loss that may result to the trust estate, whether or not the loss results from breach of trust. A contract to discharge the trustee's liability to the beneficiary for breach of trust is effective unless (1) the beneficiary was not of competent age and understanding or was under some incapacity at the time it was made, or (2) he did not know of his rights and the material facts which the trustee knew or should have known, or (3) the contract was induced by improper conduct of the trustee or was not fair and reasonable. 1 *Restatement, Trusts,* sec. 217. Appellant relied heavily on some letters which Burnett had sent to Miss Parker after the purchase of the Anaconda Copper stock. These letters were introduced for the purpose of showing that Bur-

nett did not explain that the stock had dropped in value, but led her to believe that he had invested the $25,000 at 5 per cent. It is true, of course, that the relation between trustee and *cestui que trust* should be guarded with vigilance, and contracts between them should be carefully examined to assure that no injustice is done by the trustee. *Ringgold v. Ringgold,* 1 Har. & G. 11, 70, 18 Am. Dec. 250; *Mangels v. Tippett,* 167 Md. 290, 173 A. 191; *Magruder v. Drury,* 235 U. S. 106, 35 S. Ct. 77, 82, 59 L. Ed. 151. In this case, however, the life tenant was an adult with an education, who evidently knew of her rights; and the letters and other evidence are not sufficient to show that the trustee took any advantage of her. She could probably not have obtained more than 5 per cent from any high-grade investment. Now, after both parties are dead, the Court does not feel justified in overriding the agreement which was carried out for ten years. We will, therefore, affirm the decree of the chancellor dismissing the bill of complaint.

*Decree affirmed, with costs.*