**In the Matter of the HADLEIGH D. HYDE TRUST.**

**Nancy Martz O'BRIEN, Objectioner and Appellee,**

**v.**

**Patricia H. GRIDLEY, Respondent and Appellant.**

**Nos. 16749, 16752.**

Supreme Court of South Dakota.

Considered on Briefs April 23, 1990.

Decided July 18, 1990.

Michael B. Crew of Crew & Crew, Sioux Falls, for respondent and appellant.

Steven W. Sanford of Cadwell, Sanford & Deibert, Sioux Falls, for objectioner and appellee.

SABERS, Justice.

Patricia H. Gridley appeals an order surcharging her for losses and expenses to the Hadleigh D. Hyde Trust.

## FACTS

Patricia and her brother, Robert Hyde, became co-trustees of the trust on April 25, 1980. At that time, the trust assets included farm land, stocks, and other interest-bearing investments. The beneficiaries of the trust are Patricia, Robert, Nancy Martz O'Brien, Catherine Nichols, and Martha Brown.

Robert had little direct involvement in the operation of the trust, leaving Patricia responsible for the day-to-day management. In October of 1980, Patricia and Robert entered into a management agreement with Patricia's husband John to have John manage the trust's farm property. Under the agreement, John became the exclusive agent of the trust to manage the farm property. For his services, John was paid a commission based upon the farm's gross receipts. Article VI of the agreement specified:

> Agent will not hold or manage any monies for owner, but no monies shall be paid out for operation or maintenance of the property unless approved by the agent.

The agreement remained in effect until the farm land was sold by the trust in January 1984.

On at least fifteen separate occasions, Patricia transferred trust funds, totaling $33,232, to John for use in John's commodity trading account. Only $4,000 was ever returned to the trust. Robert did not know of the commodity trading with trust funds until after the losses were sustained. He became aware of the losses on August 5, 1985.

In March of 1988, Patricia filed a petition with the court for court supervision of the trust. Shortly thereafter, the court issued such an order. The following month, Patricia filed an inventory of the trust as required by SDCL 21–22–3. On June 23, 1988, Nancy filed an objection to the inventory and a petition for accounting and a trustee's special report. Patricia filed a final report and petition for discharge in August of 1988. At the end of that month a hearing was held on Nancy's objection to the inventory and petition for accounting.

The court ruled in favor of Nancy and issued a memorandum opinion holding Patricia liable for losses and expenses of the trust. In response, Patricia filed a motion for reconsideration and a petition to surcharge the co-trustee, Robert. A final hearing on these matters was held on May 5, 1989. The court denied the motion for reconsideration and dismissed the petition to surcharge Robert.

The court entered findings of fact and conclusions of law holding Patricia and her husband responsible to the trust for $61,-205.48. The findings of fact supporting the court's decision included:

14. The Will creating the Trust does not authorize, explicitly or by implication, commodit[y] trading with Trust monies.

15. The consent of Robert Hyde as co-trustee to the commodit[y] trading was never requested nor received. Robert Hyde did not have knowledge of the commodit[y] transactions or the losses sustained until after the losses were sustained.

16. There is no evidence that Nancy O'Brien or Robert Hyde waived any objections or ratified or in any way consented to such use of Trust money.

17. John Gridley's violations of the Management Agreement were willful and deliberate. Both Patricia Gridley and John Gridley were aware of the restriction in the Agreement against the use of money from the Trust. This restriction was violated without substantial moral excuse.

18. Patricia Gridley's breaches of trust were intentional.

Since John willfully and deliberately breached the management agreement, the court concluded that he was not entitled to his management commission, and Patricia was liable to the trust for commissions already paid. Finally, the court determined that interest at the legal rate should be assessed upon the unauthorized trust expenditures from the date of transfer until August 5, 1986. By notice of review, Nancy objects to the court's termination of interest on that date. Nancy also requests appellate attorney fees. We affirm all issues except we reverse and remand the notice of review issue.

1. *Commodity trading by a trustee.*

 Patricia claims the court erred in finding the trust does not authorize commodity trading with trust funds. The propriety of a trust investment is measured by the terms of the trust and the "prudent-man rule." The prudent-man rule is codified at SDCL 55–5–1 and requires a fiduciary or trustee to:

> [E]xercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

Although a particular investment may be impermissible under the prudent-man rule, the terms of the trust may authorize such an investment. *See Hoffman v. First Virginia Bank of Tidewater,* 220 Va. 834, 263 S.E.2d 402 (1980); *Restatement (Second) Trusts* § 227 (1959).

In the present case, the terms of the trust do not authorize any exception to the prudent-man rule. The pertinent language of Hadleigh Hyde's will provides:

> In general the trustee shall have every power and authority over the trust estate and the several items of property thereof, that the trustee would have as a competent individual, if he or she were the absolute owner thereof except that the trustee may not do anything contrary to the express provisions hereof or inconsistent with the intention to create and maintain a trust as herein set forth.

Nothing in this language indicates a trustee is to have investment powers beyond that authorized by the prudent-man rule in SDCL 55–5–1. In fact, this language appears to require compliance with the prudent-man rule.

We conclude that the prudent-man rule generally does not authorize trust investments in commodities. Comment f of *Restatement (Second) Trusts* § 227 specifies that "securities for purposes of speculation" are not proper trust investments. *Accord Sartore v. Buder*, 759 P.2d 785 (Colo.Ct.App.1988) *aff'd* 774 P.2d 1383 (Colo.1989); *Russell v. Russell*, 427 S.W.2d 471 (Mo.1968). Since commodity trading is speculative in nature, it must be considered an improper trust investment.* Furthermore, the language of the will specified that the trustee may not do anything "inconsistent with the intention to create and maintain a trust." Commodity trading is inconsistent with the creation and maintenance of a trust. As explained in Bogert, *The Law of Trusts and Trustees* § 612 at 24 (rev. 2d ed. 1980):

> Since the purposes of trusts are almost always the production of an adequate income for the interim estates and the conservation of principal until a future date, investments may rarely, if ever, be made from a speculative point of view.

Commodity trading does not comply with the trust purpose of production of income and conservation of principal. Therefore, Patricia breached the trust when she gave John trust funds for commodity trading.

### 2. *Measure of damages for commodity trading losses.*

■ Patricia argues that the measure of damages for commodity trading losses should be based upon the breach of the management agreement. We disagree. When a trustee makes an investment which he is not authorized to make, the trustee is liable for the amount of the trust funds expended on the investment. *See In re Estate of Bartlett*, 680 P.2d 369 (Okla. 1984); *Restatement (Second) Trusts* § 210 (1959). Patricia was not authorized to invest trust funds in commodity trading. Therefore, she is liable for those funds expended.

### 3. *Compensation for management services.*

■ Patricia claims the court erred in determining that John was not entitled to any compensation for the services he performed under the management agreement as agent for the trust. An agent is not entitled to any compensation, even for properly performed services, if the agent is guilty of willful and deliberate disobedient conduct constituting a breach of his agency contract. *See Walker Land and Cattle Co. v. Daub*, 223 Neb. 343, 389 N.W.2d 560 (1986); *Allied Securities, Inc. v. Clocker*, 185 Neb. 524, 176 N.W.2d 914 (1970); *Restatement (Second) Agency* § 469 (1958); H. Reuschlein & W. Gregory, *Agency and Partnership* 149 (1979). In addition, if the agent has already been paid, the principal is entitled to recover the compensation. *Reuschlein, supra.*

The management agreement explicitly stated that the agent was not to hold or manage any funds for the trust. Nevertheless, that is exactly what John did when he invested trust funds in commodities. The court found that this violation of the management agreement was willful and deliberate on his part. We cannot conclude that this finding is clearly erroneous since John was aware of the provision of the agreement prohibiting such conduct. Therefore, John's willful and deliberate disobedience precludes him from receiving compensation for his services and the trust is entitled to recover any payments already made.

### 4. *Rate of interest.*

■ Patricia claims the court erred in assessing interest at the legal rate on the amount she was surcharged. Patricia argues that the rate of interest should be the rate of return on the trust's cash investments.

When a trustee commits a breach of trust and consequently incurs a liability to the trust, the trustee shall be assessed interest on the liability. The rate of interest to be assessed depends upon the cir-

---

* We note that some limited commodity transactions for the purpose of hedging a trust's farming operation may be permissible. However, the commodity transactions undertaken by Gridleys far exceeded that necessary to hedge the trust's farming operation.

cumstances of the breach of trust. When the breach of trust results from an intentional, improper trust investment, the trustee is chargeable with interest at the legal rate. *See Riggs v. Loweree,* 189 Md. 437, 56 A.2d 152 (1947); *Restatement (Second) Trusts* § 207 comment c at 469–70 (1959). The court found that Patricia's breach of trust was intentional, and we cannot say that finding is clearly erroneous. Therefore, the court was correct in assessing interest at the legal rate.

5. *Petition to surcharge the co-trustee.*

■ Patricia claims the court improperly dismissed her petition to surcharge Robert as co-trustee because she was denied the opportunity to present her case in support of the petition. She bases her claim on the court's order setting the final hearing in this matter, which stated: "Any claim that Patricia Gridley may attempt to assert against Robert Hyde as co-trustee shall not be heard or decided at the hearing." Although Patricia was not allowed to specifically argue this issue before the court, the findings that the court made on the issues it did address necessarily required dismissal of Patricia's petition.

SDCL 55–4–4 provides, in part: "No trustee who has not joined in exercising a power shall be liable to the beneficiaries or to others for the consequences of such exercise...." In addition, the *Restatement* specifies that when one co-trustee is substantially more at fault than another co-trustee for a breach of trust, the former is not entitled to contribution from the latter, but the latter is entitled to indemnity from the former. *Restatement (Second) Trusts* § 258(1)(a) (1959); *see also Reiner v. Kelley,* 8 Ohio App.3d 390, 457 N.E.2d 946 (1983). Such a situation exists in the present case. The court determined that Robert did not know about the commodity trading until after the losses were sustained, and Patricia offers no basis for deeming that finding clearly erroneous. Since Robert did not know about the commodity trading he cannot be faulted for the loss that resulted; fault for the loss rests entirely upon Patricia. In fact, the *Restatement* illustration fits the present case.

A and B are trustees for C. B permits A to assume the sole management of the trust. A purchases securities which are not proper trust investments. B does not know of or consent to the purchase. The securities are sold at a loss of $1000. If A makes good the loss he is not entitled to recover anything from B. If B makes good the loss he is entitled to recover $1000 from A.

Here, Robert permitted Patricia to handle the day-to-day operation of the trust, Patricia invested in commodities which are not a proper trust investment, and Robert did not know about the investment. As a result, Patricia is not entitled to recover anything from Robert.

6. *Termination of prejudgment interest.*

■ By notice of review, Nancy argues that the court erred in stopping the accrual of interest one year after Robert became aware of the commodity losses. SDCL 21–1–11 allows for the termination of prejudgment interest only if the debtor "is prevented by law, or by the act of the creditor, from paying the debt." The court terminated the prejudgment interest because: "A one-year period of investigation from August 6, 1985 would have been reasonable for purposes of calculating interest." Although this finding suggests that Patricia was prevented from paying her liability to the trust due to other parties' delay, it does not satisfy the requirement of the statute. To terminate the accrual of prejudgment interest, the court must specifically find the debtor was prevented from paying the debt and explain how that situation arose. Therefore, we remand this issue to the court to determine if, within the meaning of SDCL 21–1–11, Patricia was prevented from paying her liability to the trust.

7. *Attorney fees.*

■ The court allowed Nancy attorney fees pursuant to SDCL 15–17–7, with the surcharge order providing that the amount of the surcharge shall be applied first to Nancy's attorney fees. Nancy argues that appellate attorney fees should be awarded in the same manner, otherwise other bene-

ficiaries would receive a windfall and she would be unduly penalized for her diligence. We agree. A beneficiary of an estate is entitled to an allowance for attorney fees where the attorney's services have been beneficial to the estate and were necessary because of the executor's negligence, fraud or inactivity. *In re Estate of Bamberger*, 79 S.D. 85, 108 N.W.2d 50 (1961). Accordingly, we award Nancy appellate attorney fees in the amount of $1,500.

All the Justices concur.