Jim COOPER, Plaintiff and Appellant,

v.

Wayne HAUSCHILD, Betty Prunty, Sam Artz, Mike Oster, and Barb Murra, as City Commissioners of the City of Brookings and the City of Brookings, a Municipal Corporation, Defendants and Appellees.

Nos. 18702, 18703.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1994.

Decided Feb. 15, 1995.

Rehearing Denied March 14, 1995.

---

Jim Cooper, pro se.

Alan F. Glover, of Denholm and Glover, Brookings, for defendants and appellees.

PER CURIAM

Jim Cooper ("Cooper") appeals from a judgment quashing a Writ of Mandamus, arising from proceedings relating to his application to the Brookings City Commission ("City") for a malt beverage license. We affirm in part, reverse in part, and remand.

FACTS

On November 22, 1993, Cooper applied for a Uniform Alcoholic Beverage License to the City of Brookings. In his application, he requested a retail on/off sale malt beverage license for a business to be known as JD's Casino located in Brookings. The Notice of Public Hearing on Application for Alcoholic Beverage License was published as required by SDCL 35–2–5.

On December 14, 1993, City held a regular meeting at which the public hearing on Cooper's application was considered, together with objections to the application. City Commissioners Wayne Hauschild, Sam Artz, and Mike Oster voted to approve the application, while Commissioners Betty Prunty and Barb Murra voted to disapprove it. The 3–2 vote approving Cooper's application was recorded in the minutes of the City Commission meeting. Despite the approval of Cooper's application, the City's approval was not endorsed on Cooper's license application or forwarded to the State Department of Revenue for actual issuance of the license.

At its next regular weekly meeting on December 21, 1993, Commissioner Oster (who had previously voted to approve the license) made a motion to reconsider the approval of Cooper's license application. The motion was approved by a unanimous vote. Further action was deferred until the January 4, 1994 meeting, also by unanimous vote.

At the time of the vote to reconsider the approval of Cooper's license, there had been no change in Cooper's character, and no change in the proposed location of the business. After the vote to reconsider, however, Cooper informed the City he no longer intended to combine his alcoholic beverage license and video lottery machines with the operations of a laundromat, but would operate only a bar and casino.

At the following meeting on December 28, 1993, a motion was made to introduce and give first reading to proposed City Ordinance 30–93. The Ordinance proposed to prohibit the consideration for approval of any new or additional malt beverage retailer licenses or on-sale wine licenses in the City of Brookings. The motion carried by unanimous vote and the first reading was conducted.

The next regular meeting was the January 4, 1994 meeting. At this meeting, Ordinance 30–93 was read for its second time and approved by a unanimous vote. Also on the agenda was action on the motion to reconsider the approval of Cooper's malt beverage license. Another motion was made and approved to defer further action on Cooper's license until April.

Cooper then brought an action for an Alternative Writ of Mandamus to compel City to endorse its approval, granted at the December 14 meeting, on the license application and forward it to the Department of Revenue for issuance of the license. The trial court, after a complete trial on the matter, quashed Cooper's Alternative Writ of Mandamus, holding the City had the authority to reconsider its prior approval of Cooper's license,

but the Court held that Ordinance 30–93 was invalid. Both parties appeal.

### ISSUE

### DID THE TRIAL COURT ERR IN DETERMINING THAT CITY COULD RECONSIDER ITS PRIOR APPROVAL OF COOPER'S MALT BEVERAGE LICENSE APPLICATION?

Cooper contends City's action in approving his license was not subject to reconsideration. He argues the statutory scheme for the approval and issuance of alcoholic beverage licenses does not authorize a local government board which has approved a license to take action which has the effect of revoking that license. As a result, according to Cooper, upon approval of his license he was entitled to operate until such time as the license expired or was revoked by the Department of Revenue.

■ An application for a license to sell alcoholic beverages within a city must be submitted to, and approved by, the city board of commissioners, which has "discretion to approve or disapprove the application depending on whether it deems the applicant a suitable person to hold such license and whether it considers the proposed location suitable." SDCL 35–2–1.2.[1] *Luke v. Mellette County*, 508 N.W.2d 6, 7 (S.D.1993). While the governing body has broad discretion in acting on the application, that discretion is limited to consideration of the suitability of the applicant and proposed location.

*See Luke; Rushmore State Bank v. Kurylas, Inc.*, 424 N.W.2d 649 (S.D.1988). There is no dispute between the parties that the public hearing was held on Cooper's application as required by SDCL 35–2–5,[2] and City found both applicant and location to be suitable.

■ Cooper claims the City could not reconsider its action. SDCL 35–2–5.2 sets out the procedure to be followed once a license application is approved by the local governing board:

In the event of the approval of such application, *the approval shall be endorsed thereon* and also upon the present license *and the licensee shall thereupon be entitled to operate under the license* for the succeeding licensing year. However, if any transfer of ownership or location occurs, or if the licensee shall have been convicted of any criminal offense during the past licensing year, the application together with the approval of the local governing body shall be forwarded to the secretary of revenue who shall have discretion to approve or disapprove the same. The license fee shall be deposited in the general fund of the first or second class municipality or county.

(Emphasis added).

This statute has not previously been passed upon by this Court. The express language, however, employs the mandatory term "shall" both in directing that approval be endorsed on the application and in stating the entitlement to operate based on the approval. *See Farmland Ins. Co. v. Heitmann,*

---

1. SDCL 35–2–1.2 reads as follows:
   All applications for retail licenses except those set forth in § 35–2–1.1 shall be submitted to the governing board of the municipality within which the applicant intends to operate, or if outside the corporate limits of a municipality, to the board of county commissioners of the county in which the applicant seeks to operate. The application shall be accompanied by the required fee. The governing board shall have discretion to approve or disapprove the application depending on whether it deems the applicant a suitable person to hold such license and whether it considers the proposed location suitable.

2. This statute reads as follows:
   The governing board of any incorporated municipality or the board of county commissioners of any county, before which board applications for licenses of the kind referred to in § 35–2–3

are presented, shall fix the time and place for hearing upon all such applications which may come before such board and the auditor or finance officer of such board shall publish notice once in the official newspapers of such municipality or county, as the case may be, which notice shall be headed "Notice of Hearing Upon Applications for Sale of Alcoholic Beverages," shall state the time and place when and where such applications will be considered by said board and shall state that any person interested in the approval or rejection of any such application may appear and be heard, which notice shall be published at least one week prior to such hearing. At the time and place so fixed, such board shall consider such applications and all objections thereto, if any, prior to final decision thereon.

498 N.W.2d 620, 624 (S.D.1993) (the word "shall" in a statute is mandatory).

Was the City required to endorse its approval and forward it to the Department of Revenue? Alternatively, may the City wait and, in the intervening time, reconsider and adopt an ordinance effectively denying the application? Chapter 35–2 does not provide any guidance as to the time within which the approval must be endorsed on the application after the governing board has approved it. City relies upon a procedural argument that it has adopted Roberts Rules of Order which permit them to reconsider any action they have previously taken.

Essentially, City is attempting to do indirectly what it cannot do directly. That is, after a license has been approved and issued, City does not have the authority to revoke or suspend the license, only the Department of Revenue can do so. SDCL 35–2–11.1.[3] City's authority is limited to making a recommendation to the Secretary of Revenue that an application which it has approved be suspended or revoked. *Id.* In addition, SDCL 35–2–10 (license may be revoked or suspended by secretary of revenue), SDCL 35–2–12 (institution of revocation proceedings), and SDCL 35–2–21 (suspension in lieu of revocation), all make it clear that any action to affect the status of an approved license lies within the jurisdiction of the Secretary of Revenue. *Janssen v. Maxam,* 289 N.W.2d 256 (S.D.1980).

■ Since City does not have the authority to suspend or revoke Cooper's license once they had approved it, City could not reconsider its approval and then indefinitely suspend action on it as a mechanism to prevent him from operating. This Court will not condone the circumvention of a statute by any governmental entity in an attempt to do indirectly what it lacks the authority to do directly. *Poppen v. Walker,* 520 N.W.2d 238, 250–51 (S.D.1994) (Henderson, J., concurring

specially); *State v. Fryer,* 496 N.W.2d 54 (S.D.1993) (trial court cannot indirectly award restitution to non-victim); *State v. Bahm,* 494 N.W.2d 177 (S.D.1992) (prosecutor cannot obtain indirect continuance); *Associated Gen. Contractors of S.D. v. Schreiner,* 492 N.W.2d 916 (S.D.1992) (legislature cannot indirectly use motor fuel tax for other purpose); *McFarland v. Barron,* 83 S.D. 639, 164 N.W.2d 607 (1969) (Rentto, J., dissenting). According to the statutory scheme of SDCL Ch. 35–2, the only action a local governing board is authorized to take after approving an application is (a) endorse the approval on the application and forward it to the Department of Revenue, and (b) make a recommendation to the Secretary of Revenue that a license be suspended or revoked.

Further evidence that it was the intent of City to do indirectly what it could not otherwise do is the fact that they did not and have not reconsidered the application of Cooper. Additionally, and perhaps most telling, is the fact that City voted to reconsider the approval at the next weekly meeting, at which time they introduced an ordinance which effectively placed a moratorium on the granting of any license such as that sought by Cooper. The ordinance was passed at the January 4, 1994 regular meeting, just 3 weeks after the vote approving Cooper's license application. Also, Cooper's brief suggests that City approved a malt beverage license for a business within blocks of his proposed location after they had set his approved license application for reconsideration.

■ Admittedly, a governing body is entitled to have a second chance to consider action which it may have originally taken in haste or action which, because of a change in circumstances, may have a different effect than when originally taken. City's position is that to rule they cannot reconsider an approved alcoholic beverage license would prevent them from ever reconsidering any action and would create an impermissible restric-

---

3. SDCL 35–2–11.1 states:

The governing board of the municipality or the board of county commissioners which approved the application for license under § 35–2–1.2 shall recommend to the secretary of revenue following a hearing that any license issued under this title be suspended or revoked for violation of any of the provisions of this chapter or for violations of any ordinance or regulation of the governing body issuing the license relevant to alcoholic beverage control which occurs on the premises of the licensee. Upon receipt of the recommendation the secretary shall proceed in accordance with the provisions of § 35–2–10 and § 35–2–21.

## 912

tion on the carrying out of local government affairs. To require adherence to the law in the operation of local government does not create an impermissible burden. This decision will affect only action regarding alcoholic beverage licenses, and the City will remain free to invoke its power to reconsider its other actions. Cooper is entitled to a Writ of Mandamus requiring City to endorse its approval on his application and forward it to the Department of Revenue.

■ By notice of review City challenges that portion of the trial court's decision declaring Ordinance 30–93 to be invalid. However, City has cited no supporting authority for this position, therefore we considered the matter waived. SDCL 15–26A–60(6); *Kanaly v. State*, 403 N.W.2d 33 (S.D.1987), rehearing denied, 485 U.S. 930, 108 S.Ct. 1100, 99 L.Ed.2d 263 (1988); *Kostel Funeral Home v. Duke Tufty Co.*, 393 N.W.2d 449 (S.D.1986).

That portion of the trial court's ruling that City could reconsider its prior approval of Cooper's malt beverage license is reversed and remanded with directions that the trial court grant to Cooper a Writ of Mandamus directing City to endorse its approval of his malt beverage application and forward it to the Department of Revenue. The City's challenge of the invalidation of Ordinance 30–93 having been waived, the portion of the judgment declaring it invalid is affirmed.

Affirmed in part, reversed in part and remanded.

MILLER, C.J., SABERS, AMUNDSON and KONENKAMP, JJ., and WUEST, Retired Justice, participating.